UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**ANGELA DENNIS**
    Plaintiff

**v.**                                                                                                                           No. 5:08CV-00194-J

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Dennis Fentress. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 10 and 11, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on March 5, 2008, by administrative law judge (ALJ) Kathleen Thomas. In support of his decision denying Title II benefits, Judge Thomas entered the following numbered findings:

    1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2001.

    2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 15, 1998, through her date last insured of December 31, 2001 (20 CFR 404.1520(b) and 404.1571 et seq.).

    3. Through the date last insured, the claimant had the following medically determinable impairments: depression and anxiety (20 CFR 404.1520(c)).

      4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521).

      5. The claimant was not under a disability as defined in the Social Security Act, at any time from September 15, 1998, the alleged onset date, through December 31, 2001, the date last insured (20 CFR 404.1520(c)).

(Administrative Record (AR), pp. 21-29).

## Governing Legal Standards

      1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential

evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990).

## Background and procedural history

The plaintiff suffers from an unidentified medical condition, which has been described as fibromyalgia, lupus, autoimmune disorder, and/or fatty liver (AR, p. 566). The condition has a physical basis, but there is also a strong psychological overlay. The plaintiff suffers from a variety of subjective symptoms, including whole-body pain, muscle aches, exhaustion, fatigue, need to lie down during the day, inability to sleep at night, inability to focus, inability to think about anything but her pain, migraine headaches, panic attacks, inability to tolerate being in the public, anxiety, and depression. She takes a variety of medications for these symptoms, including hormones, pain medicine, arthritis medicine, migraine medicine, antidepressants, sleeping pills, and vitamin B-12 injections, which afford some limited relief.

In a decision dated October 19, 2005, the ALJ found that, beginning July 1, 2003, the month she filed her applications for Title II and Title XVI benefits, the plaintiff's affective disorder, anxiety disorder, and somatization related to fibromyalgia equal the medical criteria of Listing 12.07 of Appendix 1 of the regulations ("somatoform disorder") (AR, p. 61). This finding was based upon acceptance of the opinion of a medical advisor, Tom Wagner, Ph.D., who testified that the plaintiff's "notable problem" indicating that her condition equals the listing as of July 1, 2003, is her lack of reliability, i.e., "she'll miss more than four times a month in work" (AR, p. 568). Accordingly, the ALJ awarded the plaintiff's claim for Title XVI benefits. However, the ALJ denied her Title II claim, finding that she had failed to establish disability prior to December 31, 2001, when she was last insured for benefits. In so finding, the ALJ did acknowledge that, prior to December 31, 2001, the plaintiff suffered from "severe" fibromyalgia versus a collagen vascular disorder and early onset symptoms of depression (AR, p. 60). However, the ALJ found that these impairments did not preclude performance of the plaintiff's past relevant work of appointment clerk, which was described as exertionally "light" and requiring performance of no more than simple to detailed but not complex tasks (AR, p. 60).

On February 7, 2007, the Appeals Council affirmed the ALJ's award of Title XVI benefits but remanded for reconsideration of the Title II claim, finding among other things, that the prior decision failed to evaluate the credibility of the plaintiff's subjective complaints and a rationale in accordance with 20 C.F.R. § 404.1529 and Social Security Ruling (SSR) 96-7p (AR, p. 494).

On March 5, 2008, the ALJ issued the decision that is presently before the court upon judicial review. The ALJ found that prior to December 31, 2001 (AR, p. 23):

1. "The objective evidence of record, in particular the records regarding treatment prior to December 2001, does not establish **any** *(emphasis added)* medically determinable physical impairment."

2. The evidence "is sufficient to establish that the claimant had a medically determinable mental impairment [i.e., depression and anxiety] prior to the date her insured status expired."

3. However, "there is not convincing evidence that the [depression and anxiety] were severe on or before December 31, 2001."

4. Accordingly, the plaintiff's claim for Title II benefits was denied at the second "severity" step of the sequential evaluation process.

## Discussion

The plaintiff's first numbered contention is that "the Commissioner's decision failed to properly determine Ms. Dennis' onset date of disability" (Docket Entry No. 10, p. 8). The issue is of importance to the plaintiff because, in Title II cases, benefits may be paid for as many as twelve months before the month an application is filed. The standards for evaluating the onset of disability date are codified in SSR 83-20. The basic analytic framework is as follows:

> The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations. Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.

>A Title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s). Although important to the establishment of a period of disability and to the payment of benefits, the expiration of insured status is not itself a consideration in determining when disability first began.

The plaintiff alleges that she became disabled on September 15, 1998, the day she quit working under threat of being fired due to excessive absenteeism (AR, p. 546). SSR 83-20 further provides that, in cases of nontraumatic origin of disability such as the present case:

>1. *Applicant Allegations:* The starting point in determining the date of onset of disability is the individual's statement as to when disability began. ...
>
>2. *Work History:* The day the impairment caused the individual to stop work is frequently of great significance in selecting the proper onset date. ...
>
>3. *Medical and Other Evidence:* Medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability. The medical evidence serves as the primary element in the onset determination. Reports from all medical sources (e.g., physicians, hospitals, and government agencies) which bear upon the onset date should be obtained to assist in determining when the impairment(s) became disabling.
>
>With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
>
>Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. In such cases, consideration of vocational factors can contribute to the determination of when the disability began. ...
>
>**In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available** *(emphasis added)***.** When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

For the reasons indicated below, the magistrate judge concludes that the plaintiff's allegation of disability beginning on September 15, 1998, is "consistent with all the evidence available." Hence, the ALJ erred in finding that she was not disabled prior to her date last insured of December 31, 2001, and the evidence adequately establishes her entitlement to Title II benefits. Accordingly, we shall recommend a remand for calculation and payment of past-due Title II benefits.

The plaintiff testified that she quit work on September 15, 1998, because if she did not, she would be fired due to excessive absenteeism (AR, p. 546). She testified that, during the last four to five months of work, she was missing six to seven days a month (AR, pp. 584-585). According to the vocational expert (VE), employers typically will tolerate no more than two absences per month on a consistent basis (AR, p. 572). The plaintiff attributed her absenteeism to essentially the same subjective symptoms that the ALJ accepted were of disabling severity as of July 1, 2003.

The plaintiff further testified that, prior to December 31, 2001, she required extensive help maintaining the household and caring for her young children from her husband, in-laws, and other individuals (AR, p. 559). Consistent with this testimony, in a letter dated May 22, 2007, Laura Cooper, stated as follows (AR, p. 507):

> To whom it may concern,
>
> I ... have been friends with Angela Dennis since 1993. In about 2001, some friends and I had to start helping take care of her children and household chores, because she is not able to do them.

In a similar vein, on May 28, 2007, Stephanie McCain opined as follows (AR, p. 508):

> To whom it may concern,
>
> I have known Angela Dennis for close to fourteen years. I guess we met in 1993 and have been friends ever since. In 1998, I noticed she started having health problems. Ever since then she has had good days and bad days. Around 2000 or 2001, I started going and helping her do everyday chores. I have had to drive her to doctors' appointments, help clean her house, and take care of the kids. She has had several other friends help her as well. We would take turns helping as much as we could. In my opinion, her health has not improved over the years. I still help her as much as I can and as long as we are friends I will continue.

"The impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record." Id. The magistrate judge concludes that neither the ALJ nor the Commissioner have identified any medical or other evidence that is inconsistent with the plaintiff's allegation or the lay evidence of inability to attend full-time work prior to December 31, 2001. Nor does the ALJ's decision reflect a "convincing rationale ... for the date selected." Id.

The ALJ's finding that the plaintiff was not disabled prior to December 31, 2001, was based upon acceptance of Dr. Wagner's testimony, which in turn, was premised upon a lack of medical documentation of earlier treatment for a strictly mental impairment (AR, p. 28). Dr. Wagner testified that the first "strictly mental record" that Dr. Wagner was able to locate in the plaintiff's file was a notation to the effect that in mid-December of 2001, her primary physician, Dr. Wilson, prescribed Prozac (AR, p. 564). The ALJ relies upon Dr. Wagner's answer to her own somewhat leading question in support of her conclusion that there was no disability prior to December 31 2001, to-wit (AR, pp. 568-569):

> **ALJ:** [T]he fact that her treating physician started her on Prozac about the middle of December 2001, would that suggest to you something rather mild in nature at that point?
>
> **Dr. Wagner:** That standing alone, I'd have to say yes.

The magistrate judge concludes that Dr. Wagner's testimony does not provide a persuasive basis for the ALJ's finding of no disability prior to December 31, 2001, for the following reasons:

1. Medical documentation is not required to support the existence of disability in the case of a slowly progressive impairment such as the plaintiff's. A reasonable inference may be made that the onset of disability "occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working." Id.

2. The ALJ was called upon to infer the onset of disability based upon the evidence as a whole, not one tiny piece of evidence "standing alone."

3. Dr. Wagner's testimony was premised upon the plaintiff's "strictly mental" condition. By its nature, the plaintiff's disability is not strictly mental but rather is a combination of physical and mental factors. "The available medical evidence should be considered in view of the nature of the impairment (i.e., what medical presumptions can reasonably be made about the course of the condition)." Id.

4. Even if the deciding factor for determining the onset date in this case were medical documentation of a strictly mental impairment, a prescription for Prozac in mid-December of 2001, is still prior to December 31, 2001. Furthermore, the ALJ acknowledged that Dr. Wilson prescribed Celexa, another psychotropic medication, in September of 2001 (AR, p. 26).

Alternatively, the magistrate judge concludes that, to the extent the medical and other evidence was inconsistent with or insufficient to support the plaintiff's allegation of disability prior to December 31, 2001, the ALJ was required to "call on the services of a medical advisor when onset must be inferred." Id. Two medical advisors testified in this case. Dr. Wagner testified at the first hearing. For the reasons indicated above, we have already concluded that the ALJ's reliance

10

upon Dr. Wagner's testimony was unpersuasive. Upon remand, Dr. Weiss testified that, in his opinion, the plaintiff's medical condition equaled the listing as of December 31, 2001 (AR, p. 593). Therefore, the substantial weight of the evidence in this case reflects that the plaintiff was disabled prior to the date she was last insured for Title II benefits on December 31, 2001.

Next, the plaintiff argues that the ALJ's finding that she suffered from no "severe" physical or mental impairment prior to December 31, 2001, is not supported by substantial evidence (AR, p. 23). A "severe" impairment is any impairment that has more than a de minimis effect upon a claimant's ability to work regardless of age, education, or past work experience. *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). For essentially the same reasons we concluded that the evidence adequately supports a finding of disability prior to December 31, 2001, we now conclude that it also supports a finding of a "severe" impairment prior to December 31, 2001.

We further observe that the ALJ's findings with respect to the severity of the plaintiff's medical impairments are suspect on their face. In her first decision, the ALJ acknowledged that, prior to December 31, 2001, the plaintiff suffered from "severe" fibromyalgia versus a collagen vascular disorder and early onset symptoms of depression that limited her to "light" work involving simple to detailed but not complex tasks (AR, pp. 60-61); but upon remand, concluded that there was insufficient objective evidence of "any medically determinable physical impairment" and that her depression and anxiety were not "severe" (AR, p. 23). One might suppose that new evidence obtained upon remand warranted a finding of fewer physical and mental restrictions than previously thought. However, the only new evidence in this case consisted of the testimony of Dr. Weiss, which we have already noted fully supports the plaintiff's disability claim. But for the fact that the ALJ's first decision was not technically a "final" decision by the Commissioner on the plaintiff's

11

Title II claim, principles of administrative res judicata and collateral estoppel arguably would have precluded the ALJ from taking back her prior acknowledgment of "severe" physical and mental impairments. See *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir., 1997) and *Dennard v. Secretary*, 907 F.2d 598 (6th Cir.,1990).

Next, the plaintiff argues that the ALJ's credibility assessment flawed. In Social Security disability cases, an important issue is often the degree of limitations caused by pain and other subjective symptoms alleged by the claimant. In such cases, because tolerance to pain is very much an individual matter, the ALJ, in effect, is called upon to assess the claimant's credibility. *Villareal v. Secretary*, 818 F.2d 461, 463 (6th Cir., 1987). 20 C.F.R. § 404.1529(c) and SSR 96-7p describe the kinds of evidence that an ALJ should consider when determining the credibility of an individual's statements. "[W]hile credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence." *Rogers v. Commissioner*, 486 F.3d 234, 249 (6th Cir., 2007). "[D]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Commissioner*, 127 F.3d 525, 532 (6th Cir., 1997).

In her decision, the ALJ recounted that the plaintiff testified that, immediately prior to the date she last worked in September of 1998, "physically she was having pain everywhere in 1998 – her arms, her legs, her back, her head" and that "she had required extensive help since 1998 in caring for her children and home" (AR, p. 25). The ALJ rejected this testimony for the following reasons (AR, pp. 23-27):

1. "The claimant stated she had required extensive help since 1998, in caring for her children and home, but offered no corroborating proof of that claim."

12

2. "The record from that time shows the claimant was being seen for episodes of abdominal pain and her elevated liver enzymes, however, no underlying physical impairment was ever diagnosed."

3. "She had 3 successful pregnancies and delivered 3 healthy children. There is no evidence the claimant was considered at high risk or discouraged from becoming pregnant."

4. "Since the last hearing, she had separated from her husband. She was awarded primary custody of their three children, who were currently 7, 10, and 12. This fact strongly suggests that the claimant is considered capable both physically and mentally of caring for her children."

5. "During the period at issue, the claimant said that her oldest child helped out a lot (although that child would have only been 3 years old at most on the alleged onset date.)"

6. "It should be noted that during this period, she was a working mother with two children under the age of three, a situation which commonly leads to problems sleeping and feelings of fatigue. Despite her allegations, she went on to have a third child."

The magistrate judge concludes that the reasons offered by the ALJ for discrediting the plaintiff's testimony of disabling subjective symptoms prior to December 31, 2001, are unpersuasive for the following reasons:

1. The letters from Laura Cooper and Stephanie McCain constitute "corroborating proof" of the plaintiff's claim. The ALJ's decision fails to reflect that she gave this lay evidence any "perceptible weight." See *Lashley v. Secretary*, 708 F.2d 1048, 1054 (6th Cir., 1983).

2. As of the current date, four physicians have diagnosed or described the plaintiff's physical impairment in four different ways: fibromyalgia, lupus, autoimmune disorder, and/or fatty liver (AR, p. 566). The fact that there was no early diagnosis reflects the difficulty of diagnosis, not the non-existence of any impairment.

13

3. The ALJ's remaining bases are little more than unpersuasive attempts to turn the fact that the plaintiff is the mother of three children, whom she chose not to abandon, into bases for disbelieving her testimony.

The ALJ's credibility assessment was inadequate.

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for calculation and payment of past-due Title II benefits based upon the plaintiff's application for benefits filed in July of 2003, and her alleged onset of disability in September of 1998.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).